Good morning, Your Honors. May it please the Court, Scott Bertzik on behalf of Alexander Hughes. I'd like to reserve about three minutes for my rebuttal. We're here today on an order issued by Judge King finding that my client lacks standing to appeal. Standing, as this Court is aware, is an elastic concept. All the cases teach the same thing. It's not a whether standing exists. Here, the bankruptcy court looked at the facts, considered it to be a close call, but found that standing existed. Our problem is the district court accorded that finding no weight at all, made its own reweighing, its own determination, which the law doesn't allow, and then got it wrong. How did the district court get it wrong? Really, there are two fundamental reasons. It treated the Refco and Innkeepers cases from the Second District as somehow laying down an inviolate rule, one size fits all. I don't read them that way. I read Refco and I read Innkeepers, and I understand how those courts in those cases came out the way they did on those facts, but they've never been followed here. Even Refco teaches you take each case as it comes. There is no one size fits all. The fundamental problem that the district court missed that I think it would have benefited from more briefing is my client has a direct cause of action, not just against the trustees who have been removed for misconduct on this very asset, but against the third parties, against four different cases that say so, the probate code says so, and obviously if my client has direct standing to sue Tower Park, it's like a lesser included right to appear and say stop this before we get one more lawsuit going because this deal makes no sense, and frankly this deal not only is not in the best interest of the creditors, it's not in the best interest of the debtor's estate to have another lawsuit, and Judge King simply without briefing that point got lost. I think if you realize we have direct standing, this is a direct standing to bring an affirmative claim. What is the lawsuit that your client could bring directly against Tower Park? For aiding and abetting breach of fiduciary duty by the former trustees who have been removed on this very asset, and if you look at the cases that we've cited... Breach of fiduciary duty? Yes, Your Honor, the City of Atascadero case, the Harnedy case, King v. Johnston, Estata Bowles, all recognize where you have third parties who induce trustees to breach their duties, in fact they say the wrong is directly against the beneficiaries, not the trustees, and you can, if you have time, you can set aside improvident transactions like that and recover back into the trust property that's been improperly transferred. You can recover damages. The remedies are many, and it's well recognized in California, and it's why, frankly, the district court missed it. It's a creature of California law. I'll tell you, Counsel, what sort of bothers me about this case. I think I don't have any way of judging the dispute between Mr. Hughes and the trustees, but it looks like you've raised some very, very serious allegations, and it looks like California has responded to those, but this argument between Hughes and his trustees, which has been spilled over into this Tower Park properties, really looks like a side circus for what the bankruptcy court has in front of it, and it looks like a circus that really ought to be resolved someplace else, in California Probate Court, California Superior Court, so that the bankruptcy court can just say, okay, who's got control of this interest? Is it Mr. Hughes, or is it the trustees of this trust that was set up by his father years ago? Let's just have one person talking here. But the bankruptcy court actually reached the opposite conclusion. The bankruptcy court, who is overlooking this estate and has dealt with litigation over this property since 2008, concluded my client did have standing and should be heard. Now, he overruled the objections, but he concluded we had standing, and that's what we're here for today. Now, in terms of the merits, if we have to have litigation over this, where's it going to take place? It could be brought as an adversary proceeding in the bankruptcy, for that matter. Now, and let me draw a finer point to show you why it really does come in. Not only does my client have a direct cause of action against Tower Park for what they have done on this deal, but if you read the fine print of the settlement that they asked the bankruptcy court to approve, baked into the release that the removed trustees are giving, is an attempt to release my client's direct claim. How can we not have standing to appear and object to a settlement that were released that purports to take away that ability to fight in another forum? Now, I would have arguments as to that release. I'll be very candid with the court. I don't know that they could bind my client with that release, but I do know this, they will litigate anything, and I know it's a battle we're going to have to fight, and we shouldn't have to. They structured this settlement agreement in a particular way. They structured it to have a tight deadline, a material deadline. They structured it to get into bankruptcy court to get an approval. I would submit they did it because it was an improper modification of a plan, and they were trying to get judicial blessing on something that they knew they couldn't do. They started us down this path, and then to put the cherry on the ice cream sundae, they tried to get it built in a release of my client's direct claims. We have to have a trustee ad litem now, correct? Well, there is a trustee ad litem who objected, yes. So why isn't that trustee sufficient to protect your client's interest? I have two answers to that, and the first is, as a practical matter, if you look at some of the filings that Tower Park is that the trustee ad litem, by virtue of having stepped into the former trustee's shoes now, there actually is an interim successor trustee after removal. They're taking the position it would be a breach of the agreement for the trustee ad litem, for FTI, fiduciary trust, to act to try and protect my client's interests. That's Tower Park's official position being litigated where? Down below in front of, well, first in front of Judge Russell, and they had a hearing that was resolved in January, now it's up in front of Judge King. Judge Russell is where, which court? Bankruptcy court. Bankruptcy court, okay. And now that is back, it's gone back and forth. What happened is Judge King remanded on fiduciary trust separate appeal, and their motion to dismiss, Judge King remanded for a finding on the materiality of the deadline that was in this hearing. Judge Russell made findings, it went back up. Judge King remanded again for more findings. Now that is back up. I think there's a hearing two weeks from now on that very issue. But factually, my response is Tower Park is saying FTI can't protect us. Legally, California law says even if there's a successor trustee, that doesn't take away my client's own independent rights to object and present claims. So I think I've got both the facts and the law covered. But again, to me, the fundamental point is, if not Alexander Hughes, who? He is the sole non-contingent beneficiary of this trust. We have former trustees colluding with a debtor. They got removed for colluding for years. The whole problem with that theory, though, counsel, again, goes back to the idea that this looks like a little bit of a side circus for the bankruptcy court, in which the bankruptcy court might end up making findings that will be contrary to findings that could be entered later on in California probate proceedings, which looked like a really direct forum and where this ought to be litigated. If Mr. Hughes has got an independent right at all times here, then what is the bankruptcy court supposed to do with the trustees? That's a terrible judgment for a bankruptcy court to have to make to say, well, you've got the legal rights, but you've got the equities on your side. Well, I think what the bankruptcy court could do is what the bankruptcy court did. I'm looking at this and Mr. Hughes, I see enough that tells me you've got standing and I'm going to listen to you. And having listened to it, consider the record before me, the bankruptcy court decided to approve the settlement and did reach the merits outcome that your honor is positing, go fight your fight elsewhere. But that doesn't mean we didn't have on a standing issue. We did have standing. The bankruptcy court's factual finding that we had enough to have standing to be heard is what's should have been deferred to by Judge King. Well, but if you're a party in interest and have standing under that aspect, you're not just auditing the proceedings or getting to stand up and be heard. You also have an independent right as a party in interest to file papers and file motions and file additional, you know, try to get discovery and whatever else would be going on. So the consequence of saying you have a place at the table is not limited just to Judge Russell hearing your side of the story potentially. I understand your honor. I will say this though. This is a contested matter. It wasn't an adversary proceeding. So we didn't have to intervene or anything like that. It's simply a contested matter. Judge Russell decided to allow us and I believe that finding is entitled to deference. There's no clear error here to phrase it in terms of the legal test that my client had standing to object. You may conclude, Judge King may conclude that my client's objections were properly overruled. He may not. I actually think there were problems with what they did and that this modification of a substantially consummated reorganization plan can't be affirmed. But that's an issue for the merits. We're here on standing today and I would emphasize again, they're trying to take away the very direct claim this court is they're trying to take that away from this deal. Clearly we have to have standing to object to that. They're trying to take away a right. It is analogous and that's what led me to the class action cases we cited in our supplemental letter brief is simply that it's analogous to trying to take away a right of a absent class member. And of course they have the right to appear and object and have that tested. Sometimes courts agree, other times they don't. But we're here to make sure that we're not taking away a right. You want to reserve the remainder of your time? Okay, you may do so. Mr. Richards? Good morning, Your Honors. If you may please the court, Jeremy Richards on behalf of Appellee Taupok Properties. Your Honors, I'd like to start by addressing a number of issues that Mr. Hughes' counsel has just made just to clarify the record and sweep away a few issues that might otherwise cause some confusion. Number one, I'd like to refer to the record before Bankruptcy Judge Russell. And while it is clear that Judge Russell held, found as a legal finding that Mr. Hughes could appear and speak in his courtroom, he did not make one critical factual finding, which is what Mr. Hughes is now attempting to inject into the process. Mr. Judge Russell never found that Alexander Hughes was a creditor of Taupok Properties. And that's for a very simple reason, Your Honors. If you look at the record, if you look at the objection that Mr. Hughes filed to the settlement, which is part of the supplement that was submitted on behalf of Taupok Properties, and if you review the transcript of the proceedings before Judge Russell, you will find, Your Honors, that not once did Mr. Hughes assert that he was a creditor of the reorganized debtor. He pointed out that the Delaware LLCs, of which he is a second-tier holder, the owner of the Delaware LLCs is the trust, and Mr. Hughes is the sole beneficiary of the trust, he points out that the LLCs are creditors of Taupok. He actually, in passing, points out that the trust has a $12,000 claim against Taupok. But he never once says that he is a creditor, and in fact, the Atascadero case, which is relied upon by Mr. Hughes before the bankruptcy court, in particular at Taupok Excerpt Record 16, the case is cited, but not the proposition that Mr. Hughes is a creditor, but for the proposition that the newly appointed trustee ad litem, who Mr. Hughes had just had appointed in the probate court to protect his interests, might have the power to set aside the agreement. So we have a record in front of Judge Russell where at no point does Mr. Hughes assert that he's a creditor. I understand Mr. Hughes' counsel to have argued that Atascadero stands for the proposition that Mr. Hughes has his own cause of action against Tower Park. Yes, Your Honor, that is the position he is asserting today. That is not the proposition for which the case was cited for before Judge Russell. Okay, well, whether he did or didn't on that point, you just tell me whether Atascadero properly stands for that proposition. Does Mr. Hughes have a cause of action against Tower Park? The answer is no, and the simple reason is there really are two reasons. Number one, Atascadero is not relevant, because as I've just pointed out, and as Mr. Hughes has conceded, the loss, the alleged $24 million improper loan discount, the loss was sustained at the Delaware LLC level. The owner of the Delaware LLC level, Delaware LLCs, is the trust. Mr. Hughes is the sole beneficiary of the trust. So not only is he once removed from the loss, as in Atascadero, he's twice removed. And as Judge King pointed out, in pointing out this double layer of insulation, Judge King said that Mr. Hughes twice removed is too remote from the dispute in the bankruptcy court to have standing. There is another reason, Your Honors, that Mr. Hughes does not have standing, and that is this. Well, there are actually two more reasons. Number one, even if he is a creditor, even if we assume Atascadero gave him direct rights against Tower Park, what it did was to give him direct rights against reorganized Tower Park. As is conceded in the appellant's brief, Tower Park confirmed a plan of reorganization, which became effective on April 15th of 2010. That's almost three years before this settlement was entered into, and the settlement is allegedly the trigger for the damages sustained by Mr. Hughes. Well, Your Honors, it is Hornbook law. It's clear under the Bankruptcy Code, Section 1141d, and it's also equally clear under Supreme Court authority, Honeywell v. Smith, that a claim arising after a bankruptcy plan has been confirmed is not affected by the plan. It is actually, it's not affected by the plan, and it's not implicated by the bankruptcy proceedings. So the interesting thing is that when Mr. Hughes says, and he does in passing in his brief, that this direct claim, whatever he has, could undoubtedly be brought in the bankruptcy court, the simple answer is it can't. It's not a claim that's affected by the bankruptcy. It belongs elsewhere. I didn't understand that to be his argument. I understood his argument to be that Mr. Hughes, that the bankruptcy court certainly should have an interest in knowing that if it proceeds down this course, confirms this plan, that Tower Park is going to be subject to an additional lawsuit, and that that lawsuit can be brought by Mr. Hughes, and therefore it should hear what Mr. Hughes has to say at this time before it makes that decision. That may or may not be true, Your Honor, but that doesn't give rise to standing. Standing, as both sides concede, is governed by this court's decision in Raythorpe insulation, and in Raythorpe insulation requires that the objecting party, the party seeking to assert standing, has to establish, satisfy three separate tests. Statutory standing, which is a bankruptcy code section 1109, that the party be a creditor or party in interest, but above and beyond that are two additional requirements, which is the article three constitutional standing and prudential standing, and what the article three and the prudential standing do in particular is look at the right that is sought to be asserted, and under article three there's an examination of is this an interest that truly belongs in this court, and under prudential standing there is the zone of interest test, is what the objecting party is asserting within the zone of interest of the statutes or the case law that that party is relying on. Well, Mr. Hughes fails in both respects. Number one, as both Judge Russell and Judge King found, the bankruptcy court is there to protect the estate and of creditors. It's not there to protect the interest of Mr. Hughes's inheritance, and Mr. Hughes states time and time again in his pleadings and says again before the court today, who else is going to protect Mr. Hughes's inheritance? Well, there is another court for that purpose, the probate court, which is precisely where Mr. Hughes went before he tried to come to the bankruptcy court, and there is a trustee ad litem, and there is a new trustee now. So number one, the bankruptcy court is not set up to deal with these issues. It's not interested in Mr. Hughes's inheritance. It is interested in the best interest of the bankruptcy estate. Secondly, the two provisions that Mr. Hughes advocated in front of the bankruptcy court as to why it should deny the settlement were, number one, that the settlement is an improper modification of the plan. Well, as I've just pointed out, Your Honours, whatever claim Mr. Hughes may or may not have, it's not one that's affected by the plan. It's not modified. It's a claim that exists totally independent of the plan. And then, Your Honours, the second argument that was made, which it was that basically the settlement was not negotiated in good faith, and the argument was made, Your Honour, the settlement is too good for the debtor. It's really bad for me as the sole beneficiary of the Hughes Trust, but it's too good for the debtor. And as Judge Russell says within the first page or two of the transcript, he says in almost dumbfounded form, I've never heard an objection like this. People do not come into bankruptcy court and argue that the settlement is too good. And the truth of the matter, Your Honours, is the reason, even if Mr. Hughes is a creditor, he was not arguing in the bankruptcy court as a creditor. Mr. Hughes actually, let's just assume for the sake of argument, he is a creditor. Let's just concede that. As I've said, under the thought test, that's not enough. And just as an aside, the REFCO case only considered Section 1109 of the Bankruptcy Code. It never went on to Article 3 in prudential standing. So Mr. Hughes is not arguing as a creditor because he concedes in his papers. If he were arguing as a creditor, he'd be in the He was in fact wearing a different hat as the sole beneficiary of the Hughes Trust. And wearing that hat, he had an interest that was actually adverse to the bankruptcy estate. So what he was trying to do is shoehorn into provisions of the Bankruptcy Code, designed to protect the bankruptcy estate and its creditors, he's trying to shoehorn into that some protection of an interest that those statutes and the bankruptcy court are not designed to protect. And in fact, there is case law of this court, which is almost exactly on point. It's a case called Mignoni v. Globe Investment. It's found at 867 F. Second 556. And it is a case where an entity that the court acknowledges has creditor standing, but that's not its sole status. It is also the former owner of real estate that was foreclosed out by a third party. And the creditor comes into court and argues that the foreclosure should be of the bankruptcy. The debtor has no interest in this because the debtor has already settled with the foreclosing creditor. So this entity, which is a creditor, acknowledged in the record to be a creditor, comes into the court and argues that the foreclosure sale should be set aside, so that it, the quote creditor, can be reinstated as the owner of the property. And the Ninth Circuit says, and I think that the language is very germane to this case, the Ninth Circuit says at page 559, the appellant's cause of action under section 362, which is the relief from state provision, is a disingenuous attempt to use the bankruptcy code to their advantage. The appellant's request for relief shows them to be aggrieved property owners with interests adverse to the estate, not creditors. And then the court goes on to say that the bankruptcy code may not be used as a weapon against the debtor and its creditors. Well, Your Honor, I would submit that this case is exactly analogous to that. We have Alexander Hughes, who professes to be a creditor, although he was never ever involved in the problem over here that's my real interest, which is I'm a beneficiary of a trust and I don't think my trustees are treating me properly. I am coming in to object to this settlement. And that's not what the bankruptcy code is there for. It's not what the provisions he invokes are there for. And as Judge King pointed out, and as Judge Russell pointed out, not only has Mr. Hughes, not only does he have a remedy somewhere else, he was already invoking it. And I just want to finish on a final note and then ask if there are any questions. I think the absurdity of what's going on here is evidenced by the fact of what would happen if this court actually reinstated Mr. Hughes' appeal. Mr. Hughes will be back in front of Judge King arguing that, yes, this was an excellent settlement for the debtor because the debtor got a $24 million loan discount, but by the way, it's a bad settlement for me. That argument is not going to change. And just from a bankruptcy perspective, it makes absolutely no sense. So unless there are any questions, Your Honor, I rest. It doesn't appear there are additional questions. Thank you very much, Mr. Hughes. Thank you, Your Honors. Mr. Bertzik, you have time remaining. Thank you, Your Honors. I'll try and be brief. Most of the argument that you've heard is an attack on the merits of our objections rather than the standing issue. We're here today to talk about standing. When we go to talk about merits, I would point out some things that counsel glossed over. For example, look at the settlement agreement. Section 8 expressly attempts to modify a substantially consummated plan of reorganization. Can't do it, but they expressly say in the very agreement they're trying to bless that they can. You were told that Alexander Hughes didn't argue he was a creditor and that the court never found Alexander was a creditor. We don't have to be a creditor. A party in interest will do just nicely, and the case law says construe that term broadly. As for the city of Atascadero, it absolutely does say that beneficiaries have a direct cause of action. I'm going to quote now. This is in their excerpts of record. They include our objections to Judge Russell. Under an argument that says the agreement is unlikely to resolve the litigation between the parties, we cite city of Atascadero and quote it as follows. Trust beneficiaries may sue third parties who participated with a trustee and allege breaches of trust as long as the third party's participation was both active and for the purpose of advancing their own interests or financial advantage. That's exactly what Tower Park did, and our point to the bankruptcy court is this is so one-sided, it's collusive, it can't stand, it's not even in the debtor's best interest to have you approve a deal that's going to get voided because the facts are terrible, and there was collusion between a debtor and trustees who, let's be candid, they were days away from removal by the probate court. There were no claims pending against this trust or the trust-owned LLCs, and what the trustees did after lying in the removal trial about what their intentions were and what they were doing with Tower Park, oh no, we're not going to cut them another deal. They went and cut a deal and bought personal releases for themselves at our expense. Now, yeah, the bankruptcy court has to look out for the estate and look out for debtors, but you also look out for creditors, and I can't imagine any court, much less a court of equity like a among a debtor who's done nothing but litigate for seven years, and trustees have been removed for misconduct over this very asset, and I come back to this point. We do have this direct claim. The agreement they asked the bankruptcy court to approve tries to take that away. If you look at our excerpts of record, pages 108 to 109 will give you the broad term, then it says you'll sign a release. If these conditional provisions are satisfied, there'll be a release sign that releases the beneficiary's claim, and that's at page 141 of the excerpts of record. We have to have standing to challenge and attempt to take away our rights and have that blessed by a bankruptcy court. Thank you. Thank you very much, Mr. Bursick. We thank both counsel for the argument. With that, we have concluded the oral argument calendar for this morning. The court is adjourned.
judges: Foote, Fisher, Bybee